1  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
2  Michael Godwin (SBN 323261)
   mjgodwin@mintz.com
3  3580 Carmel Mountain Road, Suite 300
   San Diego, CA  92130
4  Telephone: (858) 314-1500
5
6  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   Kara M. Cormier (*pro hac vice forthcoming*)
7  kmcormier@mintz.com
   One Financial Center
8  Boston, MA 02111
   Telephone: (617) 542-6000
9
10 *Attorneys for Plaintiff STN Digital LLC*
11
12            **UNITED STATES DISTRICT COURT**
13          **SOUTHERN DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15 STN DIGITAL LLC, a California limited liability company, | Case No. 25-cv-00706-RSH-MSB |
| 16 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |
| 17     Plaintiff, | |
| 18   v. | |
| 19 DRONE RACING LEAGUE, INC., a Delaware corporation; and INFINITE REALITY INC., a New York Corporation, | [PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT] |
| 20 | |
| 21 | |
| 22 | |
| 23     Defendants. | Date:   June 17, 2025 |
| 24 | Judge:   Hon. Robert S. Huie |
| 25 |       Courtroom 3B |
| 26 | |

27
28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.     BACKGROUND ...................................................................................1

4           A.     The Master Services Agreement ...........................................1

5           B.     IR Operated DRL as Its Alter Ego ......................................2

6           C.     Defendants Failed to Pay Plaintiff's Invoices.....................3

7           D.     Defendants' Failure to Respond to The Complaint .............4

8    II.    LEGAL STANDARD .......................................................................4

9    III.   ARGUMENT....................................................................................5

10          A.     The Court Has Jurisdiction Over the Parties and the Dispute .............5

11          B.     Each *Eitel* Factor Weighs in Favor of Default Judgment ...................7

12          C.     Defendants Are Alter Egos and Should Be Held Jointly and Severally

13                 Liable.................................................................................9

14   IV.    CONCLUSION ..............................................................................11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Benny v. Pipes*,
   799 F.2d 489 (9th Cir. 1986) ...........................................................5

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
   840 F.2d 685 (9th Cir. 1988) ...........................................................6

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ....................................................4, 7, 9

*Hobbs v. Elec. Polymers, Inc.*,
   2021 U.S. Dist. LEXIS 262380 (S.D. Cal. Mar. 25, 2021)...................10, 11

*JBS Packerland, Inc. v. Phillips Cattle Co.*,
   2025 U.S. Dist. LEXIS 33960 (S.D. Cal. Feb. 24, 2025) ....................7, 8, 9

*NewGen, LLC v. Safe Cig, LLC*,
   840 F.3d 606 (9th Cir. 2016) ........................................................4, 5

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ..........................................................6

*Penpower Tech. Ltd. v. S.P.C. Tech.*,
   627 F. Supp. 2d 1083 (N.D. Cal. 2008)..............................................9

*Teva Pharm. Indus. v. United States Dist. Court*,
   2020 U.S. App. LEXIS 41195 (9th Cir. Dec. 22, 2020) ..............................6

*Twitch Interactive, Inc. v. Johnston*,
   2019 U.S. Dist. LEXIS 125231 (N.D. Cal. July 26, 2019) ...........................5

*ViX Swimwear, Inc. v. SBC Clothing, Inc.*,
   2015 U.S. Dist. LEXIS 82793 (S.D. Cal. June 24, 2015) ........................6, 8

*Willig v. Exiqon, Inc.*,
   2012 WL 10375 (C.D. Cal. Jan. 3, 2012)............................................10

*Xifin, Inc. v. Diagnostic Lab Servs., LP*,
   2019 U.S. Dist. LEXIS 199663 (S.D. Cal. 2019).........................................5

ii

**California Cases**

*JPV I L.P. v. Koetting*,
    88 Cal. App. 5th 172 (2023) ............................................................. 11

*Mesler v. Bragg Management Co.*,
    39 Cal. 3d 290 (1985) ..................................................................... 10

*Zoran Corp. v. Chen*,
    185 Cal. App. 4th 799 (2010) ......................................................... 10

**Federal Statutes**

28 U.S.C. § 1332 ................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

Plaintiff STN Digital LLC ("Plaintiff") submits this memorandum of points and authorities in support of its motion for default judgment against Defendants Drone Racing League, Inc. ("DRL") and Infinite Reality Inc. ("IR") (together, "Defendants"). Defendants were properly served with Plaintiff's Complaint and failed to timely respond. *See* ECF Nos. 4, 5. Thus, the Clerk entered default against DRL and IR on April 28, 2025 and May 1, 2025, respectively. *See* ECF Nos. 7, 9. Plaintiff respectfully requests that the Court enter default judgment against Defendants.

## I.    BACKGROUND

Plaintiff was forced to file this action following Defendants' admitted failure to pay for services rendered. The amount at issue is not in dispute, nor have Defendants ever questioned Plaintiff's invoices or the sufficiency of the services rendered. Instead, it appears that Defendants have a demonstrated history of accepting services, refusing to pay the bill, and forcing vendors to file suits to collect what they are owed.[1]

### A.    The Master Services Agreement

Plaintiff filed its Complaint on March 26, 2025, which asserts claims for breach of contract, account stated, and, in the alternative, quantum meruit for services rendered. *See* Compl., ECF No. 1.

Plaintiff is a limited liability company organized under the laws of the State of California, with a principal place of business in San Diego, California. *Id.* ¶ 1. Plaintiff provides digital marketing services such as onsite activations and livestreaming, content and strategy, branding and templates, and social media and community management for its clients. *Id.* ¶ 8.

---

[1] *See* https://www.forbes.com/sites/phoebeliu/2025/04/24/infinite-reality-john-acunto-155-billion-metaverse-startup-biggest-fundraise/.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

Plaintiff and DRL entered into a Master Services Agreement (the "MSA"), effective as of September 30, 2024, pursuant to which Plaintiff provided DRL various digital services outlined in the Statement of Work incorporated as part of the MSA. *Id.* ¶¶ 8, 10.

The MSA provides that:

"All invoices hereunder shall be due and payable no later than thirty (30) days following issuance by STN. Any failure by [DRL] to pay an invoice in accordance with its terms after being provided written notice of such late payment (the "Notice") and failure to cure such failure within 30 thirty days of receipt of the Notice, shall entitle STN to charge interest at the rate of one percent (1%) per month (or the maximum allowed by applicable law if lower), and to any costs and expenses associated with the collection thereof."

*Id.* ¶ 11, Ex. A. The MSA also provides for agreed-upon monthly payments. *Id.* ¶ 13. Additionally, the MSA provides that "[i]n any proceeding or threatened proceeding arising out of, or in connection with, this Agreement, the prevailing Party shall be entitled to payment of its attorneys' fees, expenses, and costs by the non-prevailing party." *Id.* ¶ 12.

**B.    IR Operated DRL as Its Alter Ego**

IR owns DRL and operates DRL as its alter ego. In April 2024, six months before Plaintiff and DRL entered into the MSA, IR acquired DRL for $250 million. *Id.* ¶ 14. IR operated DRL as if it were DRL and the entities were one and the same. Indeed, representatives from IR, not DRL, oversaw Plaintiff's work in connection with the MSA. *Id.* ¶ 16. These representatives had IR email addresses, were hired by IR, and held leadership roles at IR. *Id.* ¶¶ 17-18. John Canning—who executed the MSA on DRL's behalf, was IR's CFO. *Id.* ¶ 19. Nicholas Horbaczewski, DRL's CEO and Founder, was the Global President of IR. *Id.* ¶ 20. Additionally, Rachel Jacobson, DRL's President, was also the President of Global Business Ventures and Partnerships of IR. *Id.* Plaintiff had no interactions with any DRL employees. Instead,

every contact made on DRL's behalf was with an IR officer or employee.

Additionally, despite having claimed a "valuation of $3.5 billion" at the time it bought DRL and a more recent evaluation of $12.25 billion, IR failed to sufficiently fund DRL to meet its obligations. *Id.* ¶ 22. Instead, when IR took over DRL, it inadequately capitalized it and stripped it of its assets. *Id.* ¶ 21.

### C.   Defendants Failed to Pay Plaintiff's Invoices

DRL ceased paying Plaintiff's invoices for services rendered in or around October 2024. *Id.* ¶ 23. In December 2024, DRL sent a 60-day notice of termination, which purported to be effective as of February 19, 2025, and requested that Plaintiff continue to provide services until that date. *Id.* ¶ 24. Plaintiff continued to perform under the MSA until that date and delivered invoices for its services, but these invoices remain unpaid. *Id*. There are currently five invoices outstanding that total $256,693.00 for services rendered. *Id.* ¶ 25, Ex. C. Pursuant to the MSA, Plaintiff is also entitled to interest on the unpaid amount at the rate of one percent (1%) per month (or the maximum allowed by applicable law if lower), and to any costs and expenses associated with the collection thereof. *Id.* ¶ 11, Ex. A. As of March 31, 2025, DRL owed Plaintiff $8,213.98 in interest. *Id.* ¶ 25.

At no time during the course of Plaintiff's performance of services under the MSA did Defendants complain about the quality of the services rendered. *Id.* ¶ 27. Defendants did not contest the invoices (or their receipt of them) and did not claim that they had not authorized Plaintiff to perform services or raise any other concerns. *Id.* ¶ 28. Defendants instead requested that Plaintiff continue to provide services and promised that payment would be forthcoming. *Id.* ¶ 29. On February 7, 2025, Plaintiff advised DRL by letter that it had no choice but to cease all work due to the unpaid invoices and that it would not resume work until payment was made. *Id.* ¶ 30.

On February 23, 2025, Michael Yormack, IR's Senior Vice President of Operations, responded to Plaintiff's letter. *Id.* ¶ 33. He offered to pay $18,481 per

3

1  month for twelve months to resolve the dispute and did not contest the amount due,

2  challenge the quality of services, or otherwise object to the invoices. *Id.* ¶¶ 33-34.

3  Plaintiff rejected IR's offer and proposed a counteroffer on February 26, 2025. *Id.*

4  ¶¶ 35-36. Neither IR nor DRL has responded to Plaintiff's counteroffer despite

5  Plaintiff's repeated follow ups. *Id.* ¶ 37.

6        **D.    Defendants' Failure to Respond to the Complaint**

7        Plaintiff's counsel originally emailed IR's counsel to ask if they would accept

8  service of the Complaint and Summons. Declaration of Michael Godwin ("Godwin

9  Decl."), ¶ 2. When Plaintiff's counsel did not receive a response, Plaintiff personally

10  served the Complaint and Summons on DRL and IR on March 28, 2025 and April 5,

11  2025, respectively. ECF Nos. 4, 5. Despite being validly served and irrefutably on

12  notice of this action, Defendants have not filed a response, nor have they attempted

13  to contact Plaintiff or its counsel to seek an extension of their deadline by which to

14  do so. *See* Godwin Decl., ¶ 7. Accordingly, the Clerk granted Plaintiff's requests for

15  entry of default on April 28, 2025 and May 1, 2025. *See* ECF Nos. 7, 9.

16  **II.    LEGAL STANDARD**

17        Before entering a default judgment, a court need only find: (1) that it has

18  personal jurisdiction over the defendant and subject matter jurisdiction over the

19  plaintiff's claims; and (2) that the factors set forth in *Eitel v. McCool*, 782 F.2d 1470

20  (9th Cir. 1986) support entry of a default judgment. The *Eitel* factors are: (1) the

21  possibility of prejudice to the plaintiff if judgment is not entered; (2) the merits of

22  the plaintiff's claims; (3) the sufficiency of the complaint; (4) the sum of money at

23  stake; (5) the possibility of a dispute concerning material facts; (6) whether the

24  default was due to excusable neglect; and (7) the strong policy in favor of obtaining

25  a decision on the merits. *See, e.g.*, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616

26  (9th Cir. 2016) (citing *Eitel*, 782 F.2d at 1471-72). In making this determination, a

27

28

1  court "must take the well-pleaded allegations" of the complaint "as true." *Benny v.*
2  *Pipes*, 799 F.2d 489, 495 (9th Cir. 1986). Plaintiff satisfies this standard.

3  **III.  ARGUMENT**

4      **A.  The Court Has Jurisdiction Over the Parties and the Dispute**

5        This Court has subject-matter jurisdiction over Plaintiff's claims and personal
6  jurisdiction over the Defendants.

7        **First**, the Court has subject matter jurisdiction under 28 U.S. Code § 1332
8  because there is diversity of citizenship and the amount in controversy exceeds
9  $75,000. *See, e.g.*, *NewGen, LLC*, 840 F.3d at 613 (affirming default judgment where
10  diversity jurisdiction was adequately plead in complaint). Plaintiff is a California
11  limited liability company and its only member is a citizen of California. Compl., ECF
12  No. 1, ¶¶ 1-2. DRL is a Delaware corporation with its principal place of business in
13  New York, and IR is a New York corporation with its principal place of business in
14  Connecticut. *Id.* ¶¶ 3-4.

15        **Second**, the Court has personal jurisdiction over Defendants. The MSA
16  contains a forum selection clause wherein DRL consented to jurisdiction. *Id.* ¶ 6, Ex.
17  A § 10(d). Parties to a contract "may agree in advance to submit to the jurisdiction
18  of a given court," and "[w]hen parties agree to submit to a certain jurisdiction, that
19  agreement should be enforced and does not violate due process unless the agreement
20  is 'unreasonable and unjust.'" *Xifin, Inc. v. Diagnostic Lab Servs., LP*, 2019 U.S.
21  Dist. LEXIS 199663, *7 (S.D. Cal. 2019). Where defendants have consented to
22  jurisdiction, "the court need not embark on a 'minimum contacts' analysis." *Twitch*
23  *Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2019 U.S. Dist. LEXIS 125231,
24  at *11 (N.D. Cal. July 26, 2019) (citing *Craigslist, Inc. v. Kerbel*, No. 11-CV-3309-
25  EMC, 2012 U.S. Dist. LEXIS 108573, at *6 (N.D. Cal. Aug. 2, 2012)). Here, DRL
26  agreed that "[a]ll actions or proceedings arising in connection with, touching upon or
27  relating to [the MSA] and/or the breach thereof shall be filed only in the state or
28

federal courts situated in San Diego County, California, and the parties hereby consent and submit to the exclusive jurisdiction of such courts for the purposes of litigating any such action." Compl., ECF No. 1, ¶ 6, Ex. A § 10(d). This consent to jurisdiction similarly applies to IR because it is DRL's alter ego. *See Teva Pharm. Indus. v. United States Dist. Court*, No. 20-73430, 2020 U.S. App. LEXIS 41195, at *4 (9th Cir. Dec. 22, 2020). Defendants therefore consented to jurisdiction in this Court, and the Court has personal jurisdiction over Defendants.

Additionally, for personal jurisdiction to attach, a complaint need only allege that "the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, [ ] the claim arises out of or results from the defendant's forum-related activities, and [ ] the exercise of jurisdiction is reasonable." *See, e.g.*, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Plainly, Defendants not only explicitly consented to personal jurisdiction in this forum, but they also subjected themselves to jurisdiction by engaging with Plaintiff here for the purposes of the services provided under the MSA. *See ViX Swimwear, Inc. v. SBC Clothing, Inc.*, No. 14cv1113-GPC(NLS), 2015 U.S. Dist. LEXIS 82793, at *13-14 (S.D. Cal. June 24, 2015) (concluding that the defendant "purposefully availed itself to California by engaging in a continual business relationship with Plaintiff" as opposed to a "one-time transaction"). Accordingly, the Court has both subject matter and personal jurisdiction.[2]

---

[2] Additionally, Defendants were properly served at their designated locations for service of process and also received the Complaint and Summons by email. *See* Godwin Decl., ¶ 2; ECF Nos. 4, 5; *see also Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688-89 (9th Cir. 1988) (finding proper service under similar facts).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

**B.    Each *Eitel* Factor Weighs in Favor of Default Judgment**

Although Plaintiff is not required to establish that all seven *Eitel* factors support entry of default judgment, *see JBS Packerland, Inc. v. Phillips Cattle Co.*, No. 24-cv-01299-BAS-MSB, 2025 U.S. Dist. LEXIS 33960, *4 (S.D. Cal. Feb. 24, 2025), Plaintiff can here.

***First***, Plaintiff will be prejudiced if default judgment is not entered because Plaintiff will be left with no other recourse for recovery. *See id.* at *7. Defendants have not answered the Complaint or otherwise appeared in the case, and "[a] defendant's failure to respond or otherwise appear in a case prejudices a plaintiff's ability to pursue its claim on the merits." *Id.* Plaintiff would be without other recourse for Defendants' ongoing breach of contract and nonpayment for services rendered.

***Second*** and ***third***, Plaintiff's breach-of-contract claim and quasi-contract claims in the alternative are meritorious and sufficiently pled. Often analyzed together, these factors "require courts to determine whether a plaintiff has 'stated a claim on which it may recover.'" *Id.* at *8. To recover damages for breach of contract, a plaintiff must prove (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Id.* at *10. Plaintiff has sufficiently pled that the parties entered into the MSA and Plaintiff performed all obligations thereunder. Compl., ECF No. 1, ¶ 39-42. The MSA provides that Defendants "shall pay [Plaintiff] all fees as set forth in any applicable [Statement of Work]." *Id.*, Ex. A. Defendants also agreed that any invoice issued by Plaintiff under the MSA would be due and payable "no later than thirty (30) days following issuance." *Id.* However, Plaintiff's invoices for work performed as far back as October 2024 remain unpaid. *Id.* ¶ 25. Thus, because of this breach,

Plaintiff has suffered financial harm and sufficiently pled a meritorious claim for breach of contract.  The same is true for Plaintiff's account stated claim.[3]

**Fourth**, the sum of money at stake is necessarily proportional to the seriousness of Defendants' conduct," *JBS*, 2025 U.S. Dist. LEXIS 33960, at *14, because Plaintiff's Complaint simply seeks damages equivalent to the bargained-for value of its services that Plaintiff has already performed for the benefit of Defendants, plus the contractually-agreed accrued interest and fees. "When proper evidence is presented which shows that the compensation sought is consistent with the terms of the contract and is otherwise appropriate, the court should find that this factor weighs in favor of entry of default judgment." *Id.*

**Fifth**, there is no possibility of dispute concerning material facts because "[w]here, as here, a defendant fails to file an answer or otherwise respond to the operative complaint, the court is left with no disputed facts." *Id.* at *15. Additionally, Defendants cannot dispute that they have breached the MSA by refusing to pay the contractual rate for services that Plaintiff rendered, because at no point did Defendants suggest that Plaintiff's performance was inadequate or that Defendants' performance was otherwise excused.

**Sixth**, Defendants' default was intentional—not the product of excusable neglect. Defendants were properly served the Complaint and Summons more than two months ago, and Plaintiff's counsel even sent the Complaint and Summons to

---

[3] Defendants did not challenge the amounts outstanding, the invoices supporting those amounts, or the quality of the services performed, and acknowledged that the debt was owed. *See* Compl., ECF No. 1, ¶ 27-29, 33-34 48-50; *see also ViX Swimwear, Inc.*, 2015 U.S. Dist. LEXIS 82793, at *19 (account stated requires showing of: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

IR's in-house counsel and representatives of DRL by email. Godwin Decl., ¶ 2. Where a defendant has been properly served, courts find there to be "little possibility of excusable neglect" because it is "unlikely that Defendant is unaware of these proceedings." *JBS*, 2025 U.S. Dist. LEXIS 33960, at *15. Here, Defendants cannot argue that they were unaware that they did not pay their outstanding invoices, as they repeatedly requested that Plaintiff continue services and promised that payment was forthcoming, and a representative from Defendants made an offer to pay a portion of the balance. *See* Compl., ECF No. 1, ¶¶ 29, 33. Defendants have intentionally chosen not to respond to the Complaint, just like they chose to be nonresponsive to Plaintiff's numerous outreach attempts regarding the unpaid invoices. And as noted above, they have a history of this very conduct. *See, e.g.*, *supra* note 1.

**Seventh**, although there is a strong policy favoring decisions on the merits, Defendants' failure to respond to the Complaint makes a decision on the merits impossible. *See JBS*, 2025 U.S. Dist. LEXIS 33960, at *16. Indeed, Federal Rule of Civil Procedure 55 specifically authorizes the termination of a case before a hearing on the merits in circumstances where a defendant fails to participate in litigation. *See* Fed. R. Civ. P. 55; *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008) ("The existence of Federal Rule of Civil Procedure 55(b) . . . indicates that this preference [of deciding cases on the merits] alone is not dispositive.").

Accordingly, all the *Eitel* factors weigh in favor of default judgment against Defendants.

## C.    Defendants Are Alter Egos and Should Be Held Jointly and Severally Liable

Although DRL is the counterparty to the MSA, IR should be held jointly and severally liable for any judgment against DRL as DRL's alter ego. Federal courts apply the law of the forum state in determining whether one corporation is an alter

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

1  ego of another. *Hobbs v. Elec. Polymers, Inc*., No. 20-cv-01393-BAS-BGS, 2021

2  U.S. Dist. LEXIS 262380, *18 (S.D. Cal. Mar. 25, 2021). Under California law, two

3  entities are alter egos of one another when there is: (1) such a unity of interest and

4  ownership that the separate personalities of the two entities no longer exist, and (2)

5  adherence to the fiction of the separate existence of the two entities would create an

6  inequitable result. *See, e.g.*, *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300

7  (1985). Factors that courts consider in assessing "unity of interest and ownership"

8  include "inadequate capitalization, disregard of corporate formalities . . ., identical

9  directors and officers, commingling of funds and other assets, . . . the holding out by

10 one entity that it is liable for the debts of the other, use of the same offices and

11 employees, and the use of one as a mere shell or conduit for the affairs of the other."

12 *Willig v. Exiqon, Inc.*, No. SA CV 11-399 DOC (RNBx), 2012 WL 10375, at *9

13 (C.D. Cal. Jan. 3, 2012) (citation omitted); *see also Zoran Corp. v. Chen*, 185 Cal.

14 App. 4th 799, 811-12 (2010) (noting the "manipulation of assets and liabilities

15 between entities so as to concentrate the assets in one and the liabilities in another"

16 as relevant factors to the alter ego analysis); *Hobbs*, 2021 U.S. Dist. LEXIS 262380,

17 at *18-19.

18     ***First***, there is ample evidence of a unity of interest and ownership between

19 DRL and IR such that separate identities do not exist. As detailed above, IR failed to

20 comply with corporate formalities by operating DRL as if it was DRL and the entities

21 were one and the same. *See* Compl., ECF No. 1, ¶¶ 15-20. IR and DRL shared

22 employees and corporate officers, and IR oversaw all Plaintiff's work under the MSA

23 (that DRL had executed). *Id*. ¶ 16. Additionally, IR has failed to adequately capitalize

24 DRL as evidenced by DRL's failure to pay the amounts it owes to Plaintiff for

25 services rendered. Moreover, it was IR representatives who acknowledged the debt

26 due, promised to pay, and asked for continued services. *Id*. ¶¶ 29, 33.

27

28

**Second**, inequity and unfairness would necessarily result if the Court does not treat DRL and IR as alter egos of one another because DRL is inadequately capitalized and Plaintiff will not be able to collect a judgment against DRL. *See JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 200 (2023) (the plaintiff's "inability to collect, when combined with the other factors indicating inequitable uses of the corporate form, may satisfy the unjust result element for alter ego liability"). Thus, alter ego liability is appropriate here. *See Hobbs*, 2021 U.S. Dist. LEXIS 262380, at *19-20 (finding alter ego liability established for default judgment against corporation and its owner).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against Defendants and award damages to Plaintiff in an amount equal to $256,693.00, plus (1) interest to be calculated at the rate of one percent (1%) per month, and (2) costs associated with this action, including reasonable attorneys' fees.

Respectfully submitted,

Dated:  May 13, 2025              MINTZ LEVIN COHN FERRIS GLOVSKY
                                  AND POPEO, P.C.


                                  By */s/ Michael Godwin*
                                       Michael Godwin
                                       Kara Cormier
                                       (*pro hac vice forthcoming*)

                                  *Attorneys for Plaintiff STN Digital LLC*